**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **MONOLITHIC POWER SYSTEMS, INC.** | : | CIVIL ACTION |
| | : | |
| **v.** | : | NO.  25-536 |
| | : | |
| **REED SEMICONDUCTOR CORP.,** | : | |
| **NENGDA MICROELECTRONICS** | : | |
| **(SHENZHEN) CO., LTD., NENGDA** | : | |
| **SEMICONDUCTOR TECHNOLOGY** | : | |
| **(SHENZHEN) CO., LTD., NUVISION** | : | |
| **TECHNOLOGY, INC., WT** | : | |
| **MICROELECTRONICS CO., LTD.** | : | |

**<u>MEMORANDUM</u>**

**MURPHY, J.**                                                              **April 28, 2026**

This one of several patent infringement cases on our docket about power management

circuitry brought by Monolithic Power Systems.  In this case, Monolithic sued a group of five

defendants, and two of them, WT Microelectronics and its subsidiary NuVision, want out of the

case.  They challenge personal jurisdiction and the adequacy of the infringement allegations.

As pled, the moving defendants have a tenuous connection to Delaware; they are said to be

foreign companies that are involved with the provision of accused products into the U.S. market

generally.  Under Delaware's dual-jurisdiction approach to the stream-of-commerce theory, the

pleadings do just enough.  But WT Microelectronics disputes the facts as pled, so we will afford

Monolithic jurisdictional discovery to attempt to establish personal jurisdiction.  As for factual

sufficiency, WT Microelectronics' arguments are colorable but unpersuasive; it does not take all

that much to state a claim of patent infringement, and Monolithic did enough.  We deny WT

Microelectronics' motion to dismiss for failure to state a claim.

## I.    Background

This motion to dismiss concerns only two of the five named defendants: WT Microelectronics and its wholly owned subsidiary NuVision, which we refer to collectively as WT Microelectronics.  DI 28 at 1.  It is undisputed that both defendants are organized under the laws of, and maintain principal places of business in, Taiwan.  DI 1 at ¶¶ 9–10.

Plaintiff Monolithic designs, develops, manufactures, and sells power management solutions, such as power converters, used in consumer electronics devices.  *Id.* at ¶ 2.  Monolithic alleges that all five defendants compete on power conversion products and have infringed and continue to infringe U.S. Patent No. 10,075,078 by: making, using, selling, offering for sale, and/or importing into the United States infringing components and components specially made for use in an infringing device; and inducing others to do the same.  *Id.* at ¶ 4.  The allegations connecting the moving defendants to the United States are of particular concern.  Monolithic alleges that WT Microelectronics:

> regularly conducted and continue to conduct business in the United States, in the State of Delaware, and in this judicial district. On information and belief, Nengda and WT Microelectronics have committed infringing activities in Delaware and in this judicial district by making, using, offering for sale, and/or selling in the United States and/or importing into the United States, products and systems that infringe upon the MPS Patents, or by placing such infringing products and systems into the stream of commerce with the awareness, knowledge, and intent that they would be used, offered for sale, or sold by others in this judicial district and/or purchased by consumers in this district. As discussed further below, Nengda and WT Microelectronics are involved in the supply chain in Asia, including marketing and selling to contract manufacturers in Asia, who manufactures products for U.S.-based end companies (with whom Nengda and WT Microelectronics work on the "design in" process), which products Nengda and WT Microelectronics know (or are willfully blind to the fact that they) are then sold throughout the U.S. As a result, Nengda and WT Microelectronics' interactions with contract manufacturers and designing-in products for U.S.-based brand companies leads to the reasonably foreseeable result that Reed and Nengda Accused Products are incorporated into end products sold in the U.S. including this District. Both Nengda and WT Microelectronics directly interact with and

2

benefit from Delaware through their coordination with Nengda's affiliate Delaware corporation Reed Semiconductor.

*Id.* at ¶ 13.  Monolithic further explains that the defendants participate in the "design-in" process for United States based end-users:

> While Defendants sell the same products, Defendants must be involved in the supply chain in Asia, including marketing and selling to contract manufacturers in Asia like Taiwan-based Accton, which manufactures products for U.S.-based HPE Aruba (with whom Defendants must work on the "design in" process), which products Defendants know (or are willfully blind to the fact that they) are then sold throughout the U.S. As a result, Defendants' interaction with contract manufacturers and designing-in products for U.S.-based brand companies leads to the reasonably foreseeable result that Defendants' Accused Products are incorporated into end products sold in the U.S. including this District.

*Id.* at ¶ 61; *see also id.* at ¶¶ 44-45 (identifying WT Microelectronics as a Reed channel partner and alleging that "Nengda and WT Microelectronics coordinate with Reed and otherwise leverage their relationship with Reed to benefit from Reed's activities in the United States and Delaware.").  Monolithic also alleges that the non-moving defendants use WT Microelectronics, among other distributors, to sell the accused infringing products.  *Id.* at ¶ 32.

WT Microelectronics denies that it has conducted or solicited business in Delaware, maintained a registered agent in Delaware, maintained offices, employees, or real estate in Delaware, been on a local telephone listing in Delaware, held a bank account in Delaware, or generated any revenue from services or things used or consumed in Delaware.  DI 28 at 10.  It also denies conducting any marketing or advertising directed at Delaware and denies soliciting customers in Delaware.  *Id.*  It avers that its website is hosted outside the United States and not directed toward Delaware or a specific geography.  *Id.*  And finally, WT Microelectronics denies making, using, selling, offering to sell, or importing any Reed or Nengda accused products anywhere in the United States.  *Id.*

3

## II.    Standard of Review

*Personal jurisdiction.*  A case must be dismissed when there is no personal jurisdiction

over a foreign defendant.  *See* Fed. R. Civ. P. 12(b)(2).  To establish personal jurisdiction, a

plaintiff must establish by a preponderance of the evidence: (i) "there is a statutory basis for

jurisdiction under the forum state's long arm statute" and (ii) "the exercise of jurisdiction

comports with the defendant's right to due process."  *L'Athene, Inc. v. EarthSpring LLC*, 570 F.

Supp. 2d 588, 591 (D. Del. 2008); *see also Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945).  In

a patent infringement case, the state law of where the district court is located controls the state

long-arm statute and Federal Circuit law controls the due-process inquiry.  *Power Integrations,*

*Inc. v. BCD Semiconductor*, 547 F. Supp. 2d 365, 369 (D. Del. 2008) (citations omitted).

Exercise of personal jurisdiction may still be improper where the exercise would not

comport with traditional notions of fair play and substantial justice.  Courts consider "the burden

on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in

obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the

most efficient resolution of controversies, and the shared interest of the several States in

furthering fundamental substantive social policies."  *Burger King Corp. v. Rudzewicz*, 471 U.S.

462, 477 (1985) (citation modified) (citation omitted).

*Failure to state a claim.*  A complaint must set forth a "short and plain statement of the

claim showing that the pleader is entitled to relief," to "give the defendant fair notice of what

the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); Fed. R. Civ. P. 8(a)(2).  Under

this rule, the Supreme Court has held that "a plaintiff's obligation to provide the grounds of his

entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the

4

elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation modified) (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified) (quoting *Twombly*, 550 U.S. at 570). Pleadings that are "no more than conclusions[] are not entitled to the assumption of truth." *Id.* at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted). "[B]oilerplate and conclusory allegations will not suffice" as "[p]laintiffs must accompany their legal theory with factual allegations that make their theoretically viable claim plausible." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997) (citations omitted).

## III.   Analysis

We will first address personal jurisdiction, then the sufficiency of the pleadings.

## A.   Monolithic is entitled to jurisdictional discovery

When reviewing a motion to dismiss for lack of personal jurisdiction, we must accept all of plaintiff's allegations as true and construe disputed facts in favor of the plaintiff. *Pinker v. Roche Holding Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002) (citation omitted). Once the defendant challenges personal jurisdiction, the plaintiff must prove facts that establish personal jurisdiction by a preponderance of the evidence. *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992) (citations omitted). When a plaintiff raises a plausible jurisdictional theory, but has insufficient evidence to prove the theory, it may access jurisdictional discovery. *Round Rock Rsch. v. ASUSTeK Comput. Inc.*, 967 F. Supp. 2d 969, 973 (D. Del. 2013). We shall "assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is clearly frivolous."

*Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (citation modified) (citations omitted). "If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between [the party] and the forum state . . . the plaintiff's right to conduct jurisdictional discovery should be sustained." *Id.* (citation modified) (citation omitted).

Here, WT Microelectronics moved to dismiss a lawsuit for lack of personal jurisdiction, so Monolithic bears the burden of showing the basis for jurisdiction. *See Power Integrations, Inc. v. BCD Semiconductor*, 547 F. Supp. 2d 365, 369 (D. Del. 2008). Monolithic must present "a prima facie case for the exercise of personal jurisdiction by establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992).

i.     WT Microelectronics is subject to personal jurisdiction under a stream of commerce theory if the facts pled by Monolithic are supported by evidence

The Delaware long-arm statute "has been broadly construed to confer jurisdiction to the maximum extent possible under the due process clause." *LaNuova D & B, S.p.A. v. Bowe Co.*, 513 A.2d 764, 768 (Del. 1986) (citations omitted); U.S. Const. Amend. 14. However, the Delaware Supreme Court has not collapsed the analysis under the Delaware long-arm statute into the constitutional due process requirement. *See Round Rock Rsch. LLC v. ASUSTeK Comput. Inc.*, 967 F. Supp. 2d 969, 973 (D. Del. 2013). In relevant part, the Delaware long-arm statute provides:

> (c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:
> > (1) Transacts any business or performs any character of work or service in the State;
> > (2) Contracts to supply services or things in this State;
> > (3) Causes tortious injury in the State by an act or omission in this State;

6

> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;
> (5) Has an interest in, uses or possesses real property in the State; or
> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

10 Del. C. § 3104(c).

The Delaware Supreme Court interprets § 3104(c)(4) as a general personal jurisdiction provision. *See Merck & Co. v. Barr Lab'ys, Inc.*, 179 F. Supp. 2d 368, 373 (D. Del. 2002). In contrast, subsections (1)–(3) and (5)–(6) are specific personal jurisdiction provisions. *See Monsanto Co. v. Syngenta Seeds, Inc.*, 443 F. Supp. 2d 636, 643 (D. Del. 2006) (citation omitted). Delaware also recognizes a dual-jurisdiction theory of personal jurisdiction that is satisfied through the partial satisfaction of subsections (1) and (4). *Power Integrations*, 547 F. Supp. 2d at 371.

It is undisputed that WT Microelectronics is a foreign corporation without a principal place of business in Delaware, and it does not maintain continuous and systematic contacts with Delaware. DI 1 at ¶¶ 9–10. Therefore, there is no general personal jurisdiction under subsection (4) of the Delaware long-arm statute. *See Boone v. Oy Partek Ab*, 724 A.2d 1150, 1155 (Del. Super. Ct. 1997). And turning to specific personal jurisdiction, Monolithic does not allege that WT Microelectronics has any interest in property in Delaware, takes any actions in Delaware, or fails to take any actions resulting in injury in Delaware. *See generally* DI 1. Hence, the complaint cannot support personal jurisdiction against WT Microelectronics facially under any one subsection of the Delaware long-arm statute. *See Feres v. SPI Pharma, Inc.*, 629 F. Supp. 2d 374, 386-87 (D. Del. 2009).

Delaware's dual-jurisdiction theory presents a closer question, because Monolithic states facts tending to support exercising jurisdiction over WT Microelectronics under a stream-of-commerce approach, deriving from partial satisfaction of subsections (c)(1) and (c)(4) of the long-arm statute.  *See Boone*, 724 A.2d at 1156. "The touchstone of the [stream of commerce] analysis is *intent and purpose to serve the Delaware market*." *Power Integrations*, 547 F. Supp. 2d at 372 (quoting *Boone*, 724 A.2d at 1158) (emphasis in original).  This theory posits that, under certain circumstances, a non-resident who places its product into the marketplace may have sufficient contacts for personal jurisdiction purposes with any state in which its product ultimately surfaces.  *Id.* at 371.

We are not persuaded by WT Microelectronics' arguments against the application of the stream-of-commerce theory.  For one, WT Microelectronics improperly relies on *Siemens Aktiengesellschaft v. LG Semicon. Co.*, because that case was decided on a failure to satisfy either §§ (1) or (4) independently (and fully) and did not apply the stream of commerce theory that requires partial satisfaction of §§ (1) and (4).  69 F. Supp. 2d 622, 627 (D. Del. 1999).  WT Microelectronics also points to the criticism of the *LaNuova* footnote, which spawned the doctrine, in *Round Rock Research LLC v. ASUSTeK Comput. Inc.*, as belonging in the "dicta hall of fame."  967 F. Supp. 2d at 976 (D. Del. 2013).  Fair to say, the issue is not perfectly settled. But we found persuasive some of the contrary analyses.  *E.g., Robert Bosch LLC v. Alberee Prods., Inc.*, 70 F. Supp. 3d 665, 673-75 (D. Del. 2014).  And recently, the Delaware Supreme Court acknowledged the state courts' application of the doctrine to "manufactured products." *Contrast Phila. Indemnity Ins. Co. v. Air Vent, Inc.*, 2025 WL 2170930, at *6 (Del. Super. Ct. July 30, 2025) (citing *Round Rock*'s criticism of the dual jurisdiction theory) *with Berry v. State*

8

*Farm Mut. Auto. Ins. Co.*, 2025 WL 3678629, at *2 (Del. Dec. 18, 2025) (declining to extend application of dual jurisdiction in Delaware state courts beyond manufactured products).

In *Boone*, the Delaware Supreme Court took an intent and purpose approach to the stream-of-commerce theory. *See Boone*, 724 A.2d at 1158. The defendant intentionally shipped products into Delaware through distributors, resulting in substantial revenue from Delaware. *See id.* The Delaware Supreme Court found that a nexus existed between the tort claim and the manufacturer's product supporting jurisdiction under a stream of commerce theory. *See id.* The analogy to patent infringement is sound. Similarly, in *Wright v. Am. Home Prods. Corp.*, a Delaware Superior Court found *that* jurisdiction was proper over French defendants. 768 A.2d 518, 530 (Del. Super. Ct. 2000). In *Wright*, defendants were not the manufacturers, but were involved in a "long-standing effort" to bring the product into the United States. *Id.* at 531. The court's analysis was based on the French defendants' licensing contracts, internal communications, and negotiations concerning the product at issue in the United States market. *Id.* at 528-29. To resolve the dispute in this case, we need not (and cannot) perfectly clarify how to apply the Delaware long-arm statute to the stream-of-commerce theory for all situations. But for a patent infringement case about imported manufactured goods, we are persuaded that personal jurisdiction can be established by showing facts satisfying both §§ 3104(c)(1) and (4).

With that standard in mind, we conclude that Monolithic at least partially satisfies § 3104(c)(1) with its allegations that the acts of infringement occurred and continue to occur in Delaware, as well as § 3104(c)(4) with allegations that WT Microelectronics demonstrated an intent and purpose to serve the Delaware market through its coordination with Accton — a contract manufacturer — to work with HPE Aruba to sell their products for use in the United

States. DI 1 at ¶¶ 13, 61. The alleged design-in activities are analogous to the involvement in manufacturing and distribution that were relevant to the jurisdictional analysis in *Wright*.

WT Microelectronics denies all these allegations and has proffered testimony meant to disprove them. DI 28 at 10. But we have some reason to doubt the credibility of the affidavits employed to deny the factual allegations. The two affidavits are nearly identical. *Compare* DI 29 (Ching-Yuan Declaration) *with* DI 30 (Jen-Chieh Declaration). The affidavits also render a couple preposterously broad denials. For example, the affiants aver that their products are never used or consumed in Delaware. DI 29 at ¶ 13; DI 30 at ¶ 12. That claim strikes us as facially speculative and hyperbolic. We confirmed that hunch at the motion hearing, where WT Microelectronics conceded that it has no ability to track where its products are used and consumed and therefore cannot affirmatively say that they never are used in Delaware.

In any event, having concluded that the complaint's factual allegations, if proven, would support jurisdiction under the Delaware long-arm statute, the next step is to analyze whether asserting jurisdiction is consistent with the Due Process Clause of the Constitution.

ii.    Constitutional Due Process is satisfied if evidence supports personal jurisdiction

Due Process under the U.S. Constitution is satisfied if the Court finds the existence of "minimum contacts" between the non-resident defendant and the forum state, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316 (citation modified). A defendant's "contacts" with the forum state can give rise to "two types of personal jurisdiction: 'general' . . . and 'specific' . . . jurisdiction." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. City*, 582 U.S. 255, 262 (2017).

The stream of commerce approach under the Delaware long arm statute is no less rigorous than the stricter stream-of-commerce approach adopted by Justice O'Connor in the

10

plurality opinion of *Asahi Metal Industry Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 112 (1987) (plurality).  *See Power Integrations*, 547 F. Supp. 2d at 375.  Taking the allegations in the complaint as true, Monolithic has established the required intent to serve the Delaware market through the same design-in and coordination activities discussed above.  Therefore, assuming that theory bears fruit for Monolithic, then exercising jurisdiction also comports with Due Process.

> iii.    Exercising personal jurisdiction does not offend notions of fair play and substantial justice

"When a defendant seeks to rely on the 'fair play and substantial justice' factor to avoid the exercise of jurisdiction by a court that otherwise would have personal jurisdiction over the defendant, 'he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'"  *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010) (citing *Burger King*, 471 U.S. at 477).  Assuming that the first two prongs discussed above are met, WT Microelectronics has not advanced any persuasive reasons why jurisdiction would be unreasonable here.  Exercising personal jurisdiction over WT Microelectronics does not offend traditional notions of fair play and substantial justice.

**B.    WT Microelectronics' motion to dismiss for failure to state a claim is denied**

i.    Monolithic sufficiently pled direct infringement

So-called "direct" patent infringement lies when an unauthorized defendant "makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor."  35 U.S.C. § 271(a).  There is no dispute that Monolithic identified accused products and sufficiently connected the asserted patent to the products.  *See Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021).  But those are not WT Microelectronics' products, and WT Microelectronics argues that

11

Monolithic's direct-infringement allegations are conclusory because it is insufficient to merely allege that WT Microelectronics is a "channel partner" of Reed's. DI 1 at ¶ 45. We disagree because the complaint goes further. The complaint plainly alleges that WT Microelectronics itself sells the accused products, and that is enough to state a claim of infringement under § 271(a). DI 1 ¶¶ 30, 50, 55, 57.

ii.    Monolithic sufficiently pled both indirect infringement theories

To state a claim of so-called "indirect" infringement, meaning induced or contributory infringement under §§ 271(b) and (c), the complaint must plausibly allege (or allow for a reasonable inference) that the defendant (1) knows of the existence of the asserted patent; and (2) knows that a third party's acts constituted infringement of the patent. *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 640 (2015); *see also Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011) (inducement); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964) (contributory infringement). WT Microelectronics argues that the complaint falls short by not alleging *pre-suit* knowledge of the asserted patent, and by not fleshing out the other requirements of induced or contributory infringement. We disagree.

First, with respect to pre-suit knowledge, we are persuaded by, and will follow, the Delaware courts that "hold[] that the initial complaint may serve to provide the required knowledge for a claim of post-suit indirect infringement." *DSM IP Assets, B.V. v. Honeywell International, Inc.*, 700 F. Supp. 3d 189, 199-201 (D. Del. 2023) (explaining why and collecting cases). Second, with respect to specific intent for induced infringement, Monolithic alleges that, with knowledge of the patent, WT Microelectronics "actively induce[s] such infringement by providing datasheets and other technical and marketing materials that actively encourage Defendants' customers to incorporate and implement the Reed and Nengda Accused Products in

12

an infringing manner." DI 1 at ¶ 39. That is sufficient. Finally, for contributory infringement, Monolithic sufficiently alleges that the accused products "constitute a material part of the infringing functionality" of the patent, "are knowingly made and/or sold by Defendants for use in an infringing downstream product," and "are not a staple article or commodity of commerce suitable for substantial noninfringing use because the datasheets and other technical and marketing materials created and/or distributed by Defendants for those products confirm that they must be implemented in a downstream device in an infringing manner." *Id.* at ¶ 59. That is also sufficient at this stage.

iii.     Monolithic sufficiently pled willful infringement

WT Microelectronics asks us to dismiss the pleading of willful infringement, again because there is no allegation that it had pre-suit knowledge of the asserted patent. There is something to be said for Chief Judge Connolly's explanation that allegations of willful infringement are "not a claim upon which relief can be granted" susceptible to a motion to dismiss. *Inari Medical, Inc. v. Inquis Medical, Inc.*, 2025 WL 2912857, at *4 (D. Del. Oct. 14, 2025). But, even entertaining the motion, we conclude that "there is no requirement that the plaintiff plead additional facts, beyond knowledge of the patent or patents, in order for a claim of willful infringement to survive a motion to dismiss." *IOENGINE, LLC v. PayPal Holdings, Inc.*, 2019 WL 330515, at *7 (D. Del. Jan. 25, 2019); DI 1 at ¶ 48.

**IV.     Conclusion**

For the reasons explained above, we grant Monolithic's alternative motion for jurisdictional discovery and deny WT Microelectronics' motion to dismiss for failure to state a claim.